JERRY E. SMITH, Circuit Judge,
dissenting:
The majority finds that the cumulative effect of three alleged Brady violations is enough to warrant a new trial. Because at least one of these alleged suppressions does not violate Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the cumulative effect of the remaining two alleged violations, even if true, does not undermine confidence in the verdict. I therefore respectfully dissent from the majority’s well-intentioned affirmance of the order granting a new trial.
I.
The majority readily admits that the independent value of each of the alleged Brady violations is minimal. The majority correctly notes that “[w]hen there are a number of Brady violations, a court must analyze whether the cumulative effect of all such evidence suppressed by the government raises a reasonable probability that its disclosure would have produced a different result” (citing Kyles v. Whitley, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Under this cumulative analysis, where even the majority concedes that this is an “extremely close question,” there is no Brady violation that merits a new trial, in this important civil rights prosecution, because Brady was not violated by the government’s failure to turn over the prosecution memorandum. Absent that plank in the majority’s analysis, the remaining violations, which are minor in nature,[1] are flatly insufficient to warrant a new trial.
*494 Because the majority places so much weight on the prosecution memo, I infer that in the absence of that purported violation, the majority would not require a new trial. Because, however, the memo was neither suppressed nor material to the central issue of the case, its non-disclosure cannot be said to constitute a Brady violation.
A.
For evidence to be considered suppressed for Brady purposes, it must not have been known to the defense or discoverable to it by the exercise of reasonable diligence. See Graves v. Cockrell, 351 F.3d 143, 154 (5th Cir.2003). The allegedly violative evidence goes to a dislike of defendant Sipe by a prosecution witness, Cruce. Specifically, the prosecution memo states that “Cruce admits to disliking” Sipe. Therefore, for the non-disclosure of the memo to be considered a Brady violation, the defense must neither have been aware of the information it contained, .nor have been able to discover that information through the exercise of reasonable diligence.
In Cruce’s grand jury testimony, of which defense counsel was admittedly aware, Cruce makes it more than obvious that he did not “get along with [Sipe] that well,” at least in part because of Cruce’s belief that Sipe had an abusive personality. Despite whatever colloquial disclaimers Cruce may have used to preface or later soften his testimony, it certainly was plain to all involved, including the defense, that there was hostility between Cruse and Sipe.
That the defense was cognizant of the problem is conceded by the majority, which points out that “the defense suggested that Cruce bore Sipe a personal animosity and seized on the moment to put Sipe in a bad light.” It therefore is hard to understand how the majority then can vigorously assert that “[ejven if Sipe was in some sense ‘on notice’ that Cruce did not like him, Sipe was unable to use this suspicion at trial”(emphasis added). In the same breath, the majority argues that the prosecution memo represented the de-fénse’s “only avenue of impeachment.” Is the reader to believe that on the one hand, the defense “suggested that Cruce bore Sipe a personal animosity” at trial, while simultaneously believing that Sipe was “unable to use this suspicion at trial?”
Beyond the majority’s admission that Sipe’s defense counsel did in fact point out the ill will the witness bore toward Sipe, it is equally obvious that even had the defense not addressed this matter at trial, it was either quite aware of Cruce’s feelings or would, have been aware in the exercise of reasonable diligence. When asked, in front of the grand jury, whether he would have coffee with Sipe, -Cruce responded: “No. I really — honestly, I don’t get along with him that well. He kind of has an abusive personality, and I just have never gotten along with him. Not that I dislike him, but he’s not somebody I associate with.”
Despite Cruce’s protestation to the contrary, it is evident from this statement that Cruce does not like Sipe. He states twice that he does not get along with Sipe, and once that Sipe has “an abusive personality.” The grand jury testimony also relates *495 Cruce’s view that Sipe was “[s]ometimes rude” and was “aggressive” toward illegal aliens.
That testimony and the “revelation” in the prosecution memo are nearly identical in their effect on the reader. If I were Sipe’s counsel, and those grand jury statements were disclosed to me, I would have a pretty fair sense that the declarant held my client in low esteem. How could anyone be surprised that Cruce does not like Sipe after learning that Cruce does not get along with him and regards him as abusive, rude and aggressive? The use of a qualifying claim of respect or affection when followed by a completely inconsistent criticism, such as Cruce’s “[n]ot that I dislike him ...or one saying “with all due respect, that’s the stupidest idea I’ve ever heard,” cannot be taken at face value. It is unlikely, at best, that anyone hearing those statements would come away convinced that the declarant has the respect or affection for the subject of the statement that his initial disclaimer implies.[2] Therefore, the prosecution memorandum cannot reasonably form the basis of a Brady violation.
B.
The evidence underlying a Brady violation must be material. Graves, 351 F.3d at 153. “The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state.” Smith v. Black, 904 F.2d 950, 967 (5th Cir.1990), vacated on other grounds, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992). Again, with respect to this prong of the Brady analysis, the majority’s argument is contradictory on its own terms, and the prosecution memo was insufficiently material to find a violation of the Brady doctrine.
The majority asserts, as evidence of the materiality of the prosecution memo, that “[t]he government relied on Cruce to pull together and lend credibility to the testimony of these illegal aliens, painting him as the ‘best judge of what is reasonable out there.’ We have little doubt that his testimony was central to the jury’s determination that Sipe’s actions were inappropriate.” Yet, a few paragraphs later, the majority contends that “[a]fter all, Cruce’s testimony was not the only or even the most important evidence offered against Sipe.” Moreover, as the majority notes (quoting the district court), another witness, Murillo, not Cruce, “ ‘kind of pulled it all together with regards to what [the government’s] theory of the case was and the whole flavor of the case
The majority’s reasoning is (with due respect) confused. Was it Cruce’s testimony that pulled together and lent credibility to the government’s case? Or was it Murillo’s testimony that pulled it all together? Although it is conceptually possible for the testimony of both witnesses to have been central to the government’s case, I cannot rely on the majority’s conclusional assertions to that effect, especially when those assertions are so plainly contradictory.
Furthermore, because the prosecution memo has questionable value for impeachment purposes, it is not material. As Sipe suggests, a sense of personal dislike, separate from professional contempt, conceivably could be used as a witness impeachment tool. As a weapon for cross-examination, however, the admitted dislike would not have been highly effective.
*496 In fact, a line of questioning based on Cruce’s dislike would have allowed Cruce to describe why he disliked Sipe. His answers, stemming from Sipe’s poor professional behavior and character, would have detracted little from the credibility of his description of the facts of the alleged crime and would have done even more to make Sipe look bad before the jury.
This interpretation is bolstered by the fact that Sipe’s attorney did not vigorously attempt to pursue this line of questioning, despite Cruce’s admission before the grand jury that he did not “get along” with Sipe. Such a strategic decision speaks volumes about the attorney’s understanding that it was more damaging to pursue that line of inquiry than to let it lie. There is no hint that Cruce had a vendetta against Sipe. Rather, Cruce’s explanation of why he did not like Sipe — an explanation that was found in the grand jury testimony and the prosecution memo — indicates that Sipe was a bullish, aggressive jerk.
That is precisely the picture the prosecution was trying to portray and the defense wanted to rebut. So, the whole notion that Sipe would have cross-examined Cruce more thoroughly on the basis on his “dislike” for Sipe is highly improbable. The assertion of dislike is indicative less of a latent bias than of the usual human reaction to an aggressive, obnoxious person — a reaction that would likely have been strengthened in the minds of the jury had Sipe’s attorney more vigorously pursued this line of questioning, armed with the prosecution memo. In short, under Brady, the prosecution memo was not material.
II.
In summary, because the majority’s decision is based on a careful weighing of the cumulative value of three pieces of supposedly material and suppressed evidence (a balance that the majority grants yields a very close call), it is obvious that any disturbance to these precariously balanced scales of justice would produce a different result. As I have explained, the failure to produce the prosecution memo is not a Brady violation. Consequently, the cumulative weight of the other two purported Brady violations (a weight that even the majority admits is not great) is insufficient to upset the verdict. I respectfully dissent.

. The majority admits that both the evidence of Murillo’s prior acquittal on a charge of falsifying a police report and the non-disclo *494 sure of the benefits conferred on the alien witnesses are insufficient, by themselves, to warrant a new trial. As the majority states, Murillo’s acquittal “could [not] possibly place 'the whole case in such a different light as to undermine confidence in the jury verdict,' ” and it is a "particularly close question” as to whether the evidence of additional benefits to the witnesses was material.

. This is sometimes described as the difference between the content of a statement and its "illocutive” force. See generally J.L. Austin, How To Do Things with Words (Harvard Univ. Press 1988); John R. Searle, Speech Acts: an Essay in the Philosophy of Language (Cambridge University Press 1990).